```
                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                                   - - -

   MASHA ALLEN,                       :   CIVIL ACTION NO. 08-4614
          Plaintiff                   :
                                      :
          v.                          :   Camden, New Jersey
                                      :   January 6, 2010
   FAMILIES THRU INTERNATIONAL        :   3:38 o'clock p.m.
   ADOPTION, et al,                   :
          Defendant                   :
   . . . . . . . . . . . . . . . . . .:

                        TELEPHONE CONFERENCE
                BEFORE THE HONORABLE ANN MARIE DONIO
                   UNITED STATES MAGISTRATE JUDGE

                                   - - -


   APPEARANCES:

   For the Plaintiff:         FRANK MANERI, ESQUIRE
                              THOMAS VECCHIO, ESQUIRE
                              Dilworth Paxson, LLP
                              LibertyView
                              457 Haddonfield Road
                              Suite 700
                              Cherry Hill, NJ  08002

                              DARREN SUMMERVILLE, ESQUIRE
                              The Bird Law Group
                              2170 Defoor Hills Road
                              Atlanta, GA  30318

   For the Defendant          DONALD C. COFSKY, ESQUIRE
   FTIA:                      Cofsky & Zeidman, LLC
                              209 N. Haddon Avenue
                              Haddonfield, NJ  08033-2322


   For the Defendant          JEANNENE SMITH, Pro Se
   Smith:                     312 S. Lincoln Avenue
                              Cherry Hill, NJ  08002


   For the Defendant          BRAD WEINTRAUB, ESQUIRE
   Adagio Health:             Weiner Lesniak
                              629 Parsippany Road
                              P.O. Box 438
                              Parsippany, NJ  07054-0438
```

```
Audio Operator:        Susan Bush

Transcribed by:        Paula L. Curran, CET

        (Proceedings recorded by Liberty Court Player
digital sound recording; transcript provided by AAERT-
certified transcriber.)
```

Laws Transcription Service
48 W. LaCrosse Avenue
Lansdowne, PA 19050
(610)623-4178

1          (The following occurred in open court at 3:38
2     o'clock p.m.)
3          THE COURT:  Good afternoon and Happy New Year to
4     everyone.  This is Judge Donio.  This is a phone conference
5     in Case Number 08-4614.  We are on the record.  This
6     conference is being electronically recorded and I would ask
7     that each time you speak, you state your name for the record.
8     Let's begin by placing the appearances on the record,
9     beginning with the plaintiffs, please.
10          MR. SUMMERVILLE:  Happy New Year, your Honor, this
11     is Darren Summerville for Masha Allen.
12          MR. COFSKY:  Donald Cofsky, representing Families
13     Thru International Adoption.
14          MR. VECCHIO:  Your Honor, Tom Vecchio and Frank
15     Maneri for the plaintiff, local counsel.
16          MS SMITH:  Jeannene Smith, pro se.
17          MR. WEINTRAUB:  Good afternoon, your Honor.  Brad
18     Weintraub from Weiner Lesniak, for Adagio Health.
19          THE COURT:  All right.  This is a status conference.
20     I have a couple of items I want to go over first.  There are
21     two pending motions to amend.  They were just recently filed
22     and so, the return dates have not yet arrived and I would
23     direct this to defendants and third party defendant, if
24     there's going to be any opposition to the motions?
25          MR. COFSKY:  This is Cofsky, there are two motions

4

1  there.  One is to amend to substitute a GAL to replace Faith
2  Allen.  I have no problem with the concept.  What I am a
3  little bit concerned about though, is that other than a
4  reference, I just haven't had a chance to talk to Darren
5  about this yet.  But other than a reference to this Mr.
6  Sloan, who is the GAL in some proceedings in Pennsylvania, we
7  have no information about him.  My concern is I don't know if
8  he was a court-appointed GAL, in a specific Family Court
9  proceeding, if he's employed by the Court, like law guardians
10 are here in New Jersey.  Because I've had situations where
11 these GALs are not eligible, are not permitted to then
12 participate in some other civil action or something that may
13 involve the minor.  So, my concern is, we know nothing about
14 his background, nothing about his -- how he was appointed,
15 where he stands with this, as to whether or not he is an
16 appropriate person for this particular action.  The concept,
17 I understand, there's no question, there's got to be a GAL,
18 since she can't bring it in her own name, since she won't be
19 18 until sometime later this year.
20         By the same token, I'm concerned because she's in
21 the middle of an adoption process, which we were all just
22 discussing.  So, at some point in the near future, she's
23 going to be a member of another family while she's still a
24 minor and then the question would be, would it be more
25 appropriate to have one of those individuals and I don't know

1  if Sloan is one of the perspective adopting parents or not,
2  because that hasn't been revealed to us.  In which case, that
3  person would be more appropriate.  So, it's really who should
4  be in there, not so much should there be someone in there.
5         THE COURT:  Let me just direct this to Mr.
6  Summerville or Mr. Vecchio or Mr. Maneri.  I think Mr.
7  Cofsky's points are well put and summarize, actually, the
8  concerns I had about the motion.  And I would ask that you
9  address them.  You do not need to address them on the record
10 today.  You need to send the Court a supplemental letter
11 addressing the issues that were raised by defense counsel.
12        MR. SUMMERVILLE:  I certainly can, your Honor.  I'm
13 sorry, this is Darren Summerville.  I will be happy to do
14 that or if you wish, for efficiency's sake, I can address
15 them now.  I think I do have answers to all of Mr. Cofsky's
16 questions and I probably can actually help the Court's
17 understanding of the case.  Just involving some facts that I
18 don't think are publicly known, but that are probably
19 appropriate for discussion in this forum.
20        THE COURT:  Well, the only issue I have is that we
21 are on a record and this not being sealed, this telephone
22 conference.
23        MR. SUMMERVILLE:  Yes.
24        THE COURT:  So, if you can speak to that,
25 understanding that we are on a record, go ahead and identify

6

1  whatever specific response you would like to make.
2         MR. SUMMERVILLE: I can speak in general terms, I do
3  believe and it would educate the Court on some of these
4  facts. Mr. Sloan, this is matter of public record, has been
5  Masha's guardian ad litem in a State Court case in
6  Pennsylvania, for a little over two years. He was initially
7  appointed in response to a Children and Youth Services
8  complaint, just as a fairly common in those sorts of
9  proceedings.
10        Mr. Sloan also serves as the guardian, essentially,
11 the de facto guardian for that particular county. So, he
12 does have several charges in the course of his business. He
13 is hired by the county and our research on the issue does not
14 reveal that there would be any sort of conflict on that
15 issue, but I am not -- I probably do not have an
16 understanding at the level that Mr. Cofsky does and I will be
17 having to address that further in a communication with the
18 Court.
19        In terms of going forward, Mr. Cofsky is correct,
20 Masha, that is my client, Ms. Allen, is formally going
21 through the adoption process. There is a goal that she be
22 formally adopted by a family that she has been with for
23 several months, by her 18th birthday. Simply because that is
24 her desire to reach the age of majority while being a child,
25 a legal child of this particular family.

1         We have not identified that family because I do not
2    think I'm at liberty to do so.  I can say that Mr. Sloan is
3    not one of the perspective adoptive parents.  The adoptive
4    parents, in general terms, are a foster family of significant
5    standing, that is, they are very well respected and have been
6    adoptive parents on a number of occasions.  It is highly
7    likely that Masha will seen a name change and to the extent
8    that that does implicate the Court's sealing on this motion,
9    I would want to put that on the table for everyone.  But it
10   is likely that that procedure to institute the name change
11   will occur in the fairly near -- once the adoption is
12   finalized.
13        MR. COFSKY:  Actually, it will probably part of the
14   adoption there.  I imagine you can get pretty much any name
15   you want, when you're adopted.
16        MR. SUMMERVILLE:  The first -- the last name, I
17   understand that's correct.  I don't know about the first
18   name.
19        MR. COFSKY:  Yes, the whole thing.
20        THE COURT:  Let me just ask this question, Mr.
21   Summerville, when does the minor turn 18?
22        MR. SUMMERVILLE:  I believe it is August of this
23   year.
24        THE COURT:  And once she turns 18, is it your intent
25   that she would file the suit then, on her own behalf?

1      MR. SUMMERVILLE: It is unclear and the reason I say
2  that is simply, it is not in my control. There has been an
3  overture in the Juvenile Court proceeding, that a guardian or
4  another representative of the estate continue to oversee
5  Masha's development and her legal rights, simply because the
6  number of factors that have occurred in her past, have
7  essentially, I don't want to say stunted her development, but
8  she has obviously not had the life of a normal 18 year old,
9  at this point. And there are authorities for the provision
10 that someone can remain within control past her birthday, if
11 necessary. That said, if the adoption is finalized before
12 her 18th birthday, there is certainly the possibility that
13 she would then bring the suit on her own then.
14     THE COURT: Okay, all right.
15     MS SMITH: Can I -- I also share the same -- this is
16 Jeannene Smith. I shared the same concerns with Mr. Cofsky.
17 And I was also concerned about the no representations that
18 were offered. But also wanted to suggest that, possibly, the
19 New Jersey Court assign a guardian ad litem, that the Court
20 knows and can rely upon and possibly bring more efficiency as
21 well. I don't know if that's something that would be
22 appropriate in this matter.
23     THE COURT: Mr. Summerville, do you have any
24 response?
25     MR. SUMMERVILLE: We certainly don't have any

1  objections to the Court exercising discretion on that
2  particular level, your Honor.  We suggested Mr. Sloan simply
3  because he has years of familiarity with Masha's case, her
4  health providers, her education providers, that sort of
5  thing.  In terms of the point of contact, he certainly is in
6  the very smallest group of individuals that would make
7  effective communications about the case.
8           THE COURT:  All right, well, let me give it some
9  thought.  I will expect a supplemental submission, Mr.
10 Summerville, addressing this issues and then we'll address
11 the motion.  Other than the issues raised by Mr. Cofsky, does
12 anyone have an objection to the motion with respect to that
13 request that a guardian ad litem be substituted in for the
14 current named plaintiff?
15          MR. COFSKY:  This is Cofsky.  I have no objection to
16 the, as I said, the concept.  It's just the matter of the
17 appropriate person.
18          MS SMITH:  I agree and is it possible that we could
19 be provided with the representations of Mr. Sloan in writing?
20          MR. SUMMERVILLE:  This is Darren Summerville, I
21 don't believe I understand that question or that request.
22          MS SMITH:  Well, more information on his background,
23 his experiences, you know, if that's something that could be
24 put in writing and then we'll certainly file, you know,
25 anything in paper form, any concerns that we may have, in

1  paper form, to that.

2  MR. SUMMERVILLE:  Your Honor, this is Mr.
3  Summerville, again.  I had presumed that I would submit a
4  letter to the Court.  I did not understand, one way or the
5  other, if you want me to do that, for your eyes only or for
6  all the parties.

7  THE COURT:  I, actually, think you need to submit it
8  for all parties.  If there's anything that you think should
9  only be reviewed by the Court, you would have to separately
10 submit that and advise the other parties that you did.  I'm
11 not sure I would accept it, but I would, at least, give you
12 that opportunity.

13 MR. SUMMERVILLE:  I don't know that there is
14 anything.  I just wanted to make sure I was clear on what you
15 were requesting.

16 THE COURT:  I'm requesting a supplement to respond
17 to the questions raised by Mr. Cofsky today and Ms. Smith.
18 And also, the Court, in making any appointment of a guardian
19 ad litem, either under Rule 17 or as drafted in your papers,
20 under Rule 15, I need to make a finding that the person is an
21 appropriate guardian and as indicated by Mr. Cofsky, there's
22 just the statements in the motion papers.  There's no
23 affidavit or certification for Mr. Sloan.  No copy of any
24 order where he's been appointed guardian ad litem.  No record
25 of his experience and his ability.  And so, I would need some

1  additional information in that regard.

2          MR. SUMMERVILLE:  And I will provide that to the
3  Court, your Honor, directly.

4          THE COURT:  All right, what about the second motion
5  to amend?

6          MR. WEINTRAUB:  Your Honor, this is Brad Weintraub
7  for Adagio.  I think it's a motion to file a direct -- to
8  amend the Complaint to file a direct claim against my client.
9  And I reviewed the motion preliminarily and I need to look at
10 it further.  We just got it, I think, a couple of days ago.
11 Maybe it was filed December 31st, if I'm not mistaken, so, I
12 haven't fully reviewed it.

13         THE COURT:  All right, so, we'll wait to see if
14 there's any objection filed.  I did want you to, if you
15 could, respond to the first because I don't think you said
16 anything with respect to the first.

17         MR. WEINTRAUB:  Yes, I'm sorry, your Honor.  I join
18 in Mr. Cofsky's comments.  I mean, in theory, I have no
19 objection to the motion to name a guardian ad litem and
20 that's what I told Mr. Summerville, that I had no objection
21 to it.  It does make sense to get more information on Mr.
22 Sloan, so, those are my comments, your Honor.

23         THE COURT:  Okay.  All right, well, this is set up
24 for a status conference then.  Is any -- Mr. Cofsky or Ms.
25 Smith, do you have any response, at all, with respect to

12

1 whether you have objection to the second motion to amend?

2 MS SMITH: Again, we also have just received it and
3 haven't had extensive time to go over it. But if I do have
4 an objection, I'll certainly file it.

5 THE COURT: All right.

6 MR. COFSKY: And I'm pretty -- this is Cofsky -- I'm
7 pretty much in the same position. Actually, I just saw it
8 for the first time, last evening. I want to compare it to
9 the original and take a look. I'm well aware of the liberal
10 nature of granting amendments. For one thing, if it is
11 granted and it is amended, I did note that in our last
12 management conference, we had a deadline at the end of
13 December, the 30th or 31st, to file motions to amend or to
14 add parties. In reviewing it, I don't know if that will lead
15 to a determination of someone else to be added or not. So, I
16 would hope that if that's something I so determine that I
17 will be barred from adding someone, simply because that
18 deadline has passed, even though now, we have a -- we may
19 have a new amended Complaint.

20 THE COURT: All right, I understand your position
21 and I think we can address that, if that time comes.

22 MR. COFSKY: Okay, I just wanted to make sure I was
23 out there with it.

24 THE COURT: All right. Right now, the fact
25 discovery deadline is at the end of February. These

1  pleadings need to be set before I take it, the parties are
2  going to take any depositions and we need to resolve the
3  guardianship issue.  Is there any request to alter the
4  discovery deadlines, at this time?
5              MR. SUMMERVILLE:  Your Honor, this is Darren
6  Summerville.  Let me alert the Court and perhaps, the
7  parties, to an issue that arises from perfecting the motion,
8  that is, the motion to amend?
9              THE COURT:  Yes.
10             MR. SUMMERVILLE:  For efficiency's sake and simply
11 because under like the duty of candor necessitates it.  In
12 bringing a direct claim against the current third party
13 defendant, Adagio, we are unclear, but I think Mr. Weintraub
14 can clarify, we believe they may, that entity may be a
15 Pennsylvania entity.  If that's the case, Masha Allen is
16 still a resident of Pennsylvania, as well and a direct claim
17 would then destroy the diversity between the parties.
18             THE COURT:  Okay and this case was not removed, so,
19 what occurs then?
20             MR. SUMMERVILLE:  We would suggest that what we
21 enter into some sort of consent remand down to a State Court
22 in Pennsylvania.  I guess there is already the, I mean, there
23 is the theoretical possibility that any one of the defendants
24 could move to dismiss, at that point in time.  At which
25 point, we would simply refile and that would simply to stay

1    the attempt, that is with a consent remand.

2         MR. WEINTRAUB:  Your Honor, this is Brad Weintraub.
3    I did see that Masha Allen was a resident of Pennsylvania and
4    my client is a Pennsylvania company.  Their principal place
5    of business is in Pittsburgh and I believe their place of
6    incorporation is also Pennsylvania.  So, for purposes of the
7    subject matter jurisdiction, it's, you know, they are a
8    Pennsylvania entity.  So, I also believe that that would
9    destroy diversity.

10        THE COURT:  Which would, I take it, since this case
11   wasn't removed, lead the Court to have to enter an order of
12   dismissal and then the plaintiff will just refile in State
13   Court in Philadelphia or in Pennsylvania somewhere.

14        MR. SUMMERVILLE:  I believe that that is certainly
15   possible, your Honor.  I believe we're still, in terms of the
16   time frame for a remand.  So, you know, to save a step, we
17   could all potentially agree to that sometime outside the
18   Court's time.

19        THE COURT:  Well, I'll let you try to work that out.
20   I'm not aware of the ability to remand a case that wasn't
21   removed.  But if there's a basis to do that, you can send me
22   a letter and indicate that, okay?

23        MR. SUMMERVILLE:  Very well.

24        THE COURT:  All right, well, thank you for your
25   candor to the Court and is it --

| | |
|---|---|
| 1 | MS SMITH:  I have a question regarding the second |
| 2 | motion.  Would that necessitate a requirement to refile -- to |
| 3 | file a new answer to incorporate an old answer in an |
| 4 | amendment.  How do we address that? |
| 5 | THE COURT:  Ms. Smith, is your question directed to |
| 6 | the Court? |
| 7 | MS SMITH:  Yes. |
| 8 | THE COURT:  And what, specifically, is your |
| 9 | question? |
| 10 | MS SMITH:  Again, regarding the second motion, does |
| 11 | that necessitate filing a new answer or can we just amend -- |
| 12 | an amendment that incorporates our old answer into the new |
| 13 | response? |
| 14 | THE COURT:  Mr. Cofsky, what's your position? |
| 15 | MR. COFSKY:  Any time I'm served with an amended |
| 16 | Complaint, I'm going to file an answer to the amended |
| 17 | Complaint.  Most of which would simply be repeating what I |
| 18 | had said in my first answer, but now also addressing the new |
| 19 | one and raising any separate defenses, which could be |
| 20 | available because of the new pleadings. |
| 21 | MS SMITH:  Thank you. |
| 22 | THE COURT:  All right, is there anything further |
| 23 | then for today? |
| 24 | MR. COFSKY:  I thought you had said something, maybe |
| 25 | I misunderstood, because of the changing posture now with an |

1  amended Complaint and the discovery deadlines, yes, there is,
2  I believe, we would all be requesting, by necessity, the
3  discovery deadlines will need to be amended.
4           THE COURT:  All right, thank you for reminding me of
5  what I had said a few minutes ago.  Does everyone consent to
6  a 60-day extension of the deadlines for fact discovery and
7  experts?
8           MS SMITH:  Yes.
9           MR. SUMMERVILLE:  For the plaintiff, your Honor, we
10 have no objection.
11          MR. COFSKY:  Of course, Cofsky, no objection.
12          MR. WEINTRAUB:  Your Honor, Brad Weintraub, no
13 objection.
14          THE COURT:  All right, so, we'll push all those
15 dates back by 60 days.  We'll wait to receive the
16 supplemental submission on the first motion.  We'll see if
17 there's any objection to the second motion and I'll wait to
18 see if any party sends me a letter about whether this case
19 needs to be by consent, sent to another district or whether
20 the parties understand that the case would have to be
21 dismissed once the amendment is permitted.
22          All right, there's nothing further.  Anything from
23 the plaintiffs?
24          MR. SUMMERVILLE:  No, your Honor.
25          THE COURT:  From defendants?

```
                                                                  17
 1             MS SMITH:  No.
 2             MR. COFSKY:  Nothing from Cofsky.
 3             MR. WEINTRAUB:  Your Honor, Brad Weintraub, nothing.
 4             THE COURT:  Ms. Smith?
 5             MS SMITH:  No.
 6             THE COURT:  I'm sorry, I didn't hear you, Ms. Smith,
 7   anything further?
 8             MS SMITH:  Nothing, thank you.
 9             THE COURT:  All right, everyone have a nice day.  We
10   are adjourned.
11             (Proceeding adjourned 3:57 o'clock p.m.)
12                              * * *
```

<u>CERTIFICATION</u>

I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

```
s:/Geraldine C. Laws, CET          Dated 9/16/10
Laws Transcription Service
```